IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AT&T Intellectual Property I, L.P.,<br>AT&T Mobility II, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>Airbiquity Inc.,<br><br>    Defendant. | § § § § § § § § § § § § | Civil Action No.: 3:08-cv-1637-M |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Airbiquity, Inc.'s Motion to Transfer Venue [Docket Entry #8]. For the reasons given below, the Motion is **DENIED**.

*Background*

At issue in this case are five products designed by Airbiquity, Inc., a Washington corporation. When these products are used together as a system, they allow data transmission to and from automobiles. The system is designed to provide services such as vehicle navigation, emergency services, fleet management and other logistical services that require coordinated data transmission. Plaintiffs AT&T Intellectual Property I, L.P., a Nevada limited partnership, and AT&T Mobility II, LLC, a Delaware corporation (collectively, "AT&T") claim that these products infringe ten AT&T patents, and AT&T seeks monetary and injunctive relief for the alleged infringement. On October 30, 2008, Airbiquity filed a Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a), claiming that this suit should be transferred to the Western District of Washington.

*Legal Standard*

Under 28 U.S.C. § 1404(a), a district court may transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have [originally] been brought."[1]

The law in the Fifth Circuit requires that a district court consider a number of private and public interest factors when determining whether to grant a motion to transfer.[2] The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems regarding conflict of laws or the application of foreign law.

The plaintiff's choice of venue is not properly considered as an independent factor in the analysis, but it is entitled to deference, and therefore the party seeking transfer has the burden to show good cause for the transfer.[3] The burden on the movant is "significant," and for a transfer to be granted, the transferee venue must be "clearly more convenient than the venue chosen by the plaintiff."[4]

In the recent case of *In re Volkswagen of America, Inc.* (*Volkswagen II*), the Fifth Circuit elaborated on the proper application of the § 1404(a) transfer factors.[5] The plaintiffs sued Volkswagen, alleging that design defects in the automobile led to their injuries. The district to

---

[1] The parties agree that the action could have originally been filed in the Western District of Washington.
[2] *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004).
[3] *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) (*Volkswagen II*)
[4] *Id.*
[5] *Id.*

2

which the defendant sought transfer was the district where the vehicle was purchased and where the witnesses, wreckage, and other physical evidence were located. The district court denied transfer, but the Fifth Circuit granted a writ of mandamus and ordered the case transferred.

*Volkswagen II* clarified the application of a number of the factors. The Fifth Circuit held that despite technological advances that made the physical location of documents less significant, the location of sources of proof remains a meaningful factor in the transfer analysis.[6] The court also clarified that when the proposed transferee venue enjoys absolute subpoena power over witnesses and trial, and the original forum does not, that factor also weighs in favor of transfer. With regard to the third private interest factor, the Court instructed that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue . . . is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."[7] Finally, *Volkswagen II* stated that where all the relevant events occurred in the transferee district and the only connection to the original district was that products of the same type were sold there, the transferee district's localized interest in seeing the case decided there significantly favors transfer.

In *In re TS Tech USA Corp.*,[8] the Federal Circuit applied *Volkswagen II* to a motion to transfer venue in a patent case. In *TS Tech*, the Federal Circuit found that the mere sale of allegedly infringing products in the original forum did not give that venue a "substantial interest" in having the case decided locally.[9] Pointedly, the Federal Circuit noted that, because the sale of infringing products in the forum "could apply virtually to any judicial district or division in the

---

[6] *Id.* at 316.
[7] *Id.* at 317 (citing *In re Volkswagen I*, 371 F.3d 201, 204-05 (5th Cir. 2004)).
[8] 551 F.3d 1315 (Fed. Cir. 2008).
[9] *Id.* at 1321.

3

United States," to rely on that as a basis to find that the district had a localized interest in the controversy "stretches logic."[10]

Since *TS Tech*, several district courts have ruled on the proper application of its principles to other patent cases.[11] The Eastern District of Texas, which originally decided *TS Tech*, analyzed a motion to transfer in a patent case in *Novartis Vaccine and Diagnostics Inc. v. Hoffman-La Roche Inc.*[12] In *Novartis*, the plaintiff alleged infringement by a drug used to treat HIV. The drug was developed in North Carolina, the active pharmaceutical ingredient was manufactured in Colorado, processed in either Michigan or Switzerland, packaged in New Jersey, and sold nationwide. The defendants moved to transfer the case to North Carolina, on the grounds that North Carolina contained relevant evidence and key witnesses, while the only connection to the Eastern District of Texas was the sale of allegedly infringing products in the district. The court denied the motion, finding that "the central location of the Eastern District of Texas in relation to this nationwide suit makes it, at the very least, as convenient a location as North Carolina."[13] Because the witnesses were spread across the nation, the court found that transferring the case to North Carolina would merely substitute the convenience of some witnesses for that of others.

The parties have identified the following witnesses:

Airbiquity Nonparty Witnesses:
1. Dan Preston, former Airbiquity employee (from Bainbridge Island, King County, WA)
2. Joseph Preston, former Airbiquity employee (from Bainbridge Island, King County, WA)
3. Rod Proctor, former Airbiquity employee (from Seattle, WA)

Airbiquity Party Witnesses:
1. Liang Hong, Vice President and Chief Technology Officer (from Sammamish, WA)

---

[10] *Id.* (quoting *Volkswagen II*, 545 F.3d at 318).
[11] *See, e.g., PartsRiver, Inc. v. Shopzilla, Inc.*, No. 2:07-cv-440, 2009 WL 279110, at *1 (E.D. Tex. Jan. 30, 2009); *Invitrogen Corp. v. General Elec. Co.*, No. 6:08-CV-113, 2009 WL 331889, at *1 (E.D. Tex. Feb. 9, 2009).
[12] No. 2:07-cv-507(DF), 2009 WL 349760, at *1 (E.D. Tex. Feb. 3, 2009).
[13] *Id.* at *5.

2.  Bheem Zhade (from Redmond, WA)
3.  Kamyar Moinzadeh, Airbiquity's Chief Executive Officer (from Bellevue, WA)
4.  Dave Quimby (from Seattle, WA)
5.  Darrin Garret (from Kingston, WA)
6.  Kiley Birmingham (from San Luis Obispo, CA)
7.  Tom Shigeno (from Newcastle, WA)
8.  John Atherly, Airbiquity's Chief Financial Officer (from Seattle, WA)
9.  David Jumpa, Airbiquity's Senior Vice President, Global Business Development (from Seattle, WA)

AT&T Party Witnesses:
1.  David Cho, Assistant Secretary of AT&T Intellectual Property, Inc. (from Dallas, TX)
2.  David A. Haug, Chief Financial Officer, AT&T Intellectual Property, Inc. (from Austin, TX)
3.  Yuming Huang, inventor, AT&T Labs, Inc. (from Aurora, IL)
4.  Xiaofeng Gao, inventor, AT&T Labs, Inc. (from Johns Creek, GA)
5.  Robert T. Moton, Jr., inventor, Cingular Wireless Employee Services, LLC (from Alpharetta, GA)
6.  Samuel N. Zellner, inventor, AT&T Intellectual Property Marketing, Inc. (from Dunwoody, GA)

AT&T Nonparty Witnesses:
1.  Armin Roeseler, inventor (from Chicago, IL)
2.  Wei Zhao, inventor (from Alpharetta, GA)
3.  Lara Morgan, inventor (from Norcross, GA)
4.  Michael A. Oblon, inventor (from Potomac, MD)
5.  Mark J. Enzmann, inventor (from Atlanta, GA)

*Analysis*

**Private Interest Factors**

*(1) The relative ease of access to sources of proof*

Airbiquity first argues that it has identified documentary evidence located in the Western District of Washington, while AT&T has identified no such evidence located in the Northern District of Texas.  The Declaration of Kamyar Moinzadeh, Airbiquity's CEO, states that all of the documentary evidence Airbiquity will use in its defense, including documents relating to the marketing, development, design, testing, and sale of the allegedly infringing products, resides in the Western District of Washington.

AT&T agrees that documentary evidence will be the main source of proof in this case, but argues that because the parties will "no doubt" agree to exchange documents electronically, the physical distance between the parties and the forum is "irrelevant" to the analysis. However, in *Volkswagen II*, the Fifth Circuit explicitly rejected this position, holding that although advances in technology have lessened the burden of exchanging documents, the location of sources of proof remains a meaningful factor in the transfer analysis, and in *TS Tech*, the Federal Circuit engaged in a similar analysis.[14]

This Court finds that the first factor weighs slightly in favor of transfer. Airbiquity has shown that relevant documents reside in the Western District of Washington, while AT&T has not shown that any relevant documents are located in the Northern District of Texas. However, the evidence here is documentary, and as the Fifth Circuit has noted, advances in technology have lessened the burden of exchanging documents. This case is unlike the situation in *Volkswagen II*, where there was physical non-documentary evidence related to a car accident, or *TS Tech*, in which keeping the case in the original forum would have required the parties to ship the allegedly infringing headset assembly from Ohio to Texas.[15] There may be a similar issue to that in *TS Tech* in this case, but AT&T did not identify an object which would need to be transported to Washington from elsewhere. Here, the only evidence identified is documentary, and the burden of exchanging documents is comparatively slight.

*(2) The availability of compulsory process*

Airbiquity claims that the availability of compulsory process in the Western District of Washington to compel local witnesses to testify at trial also weighs in favor of transfer. Airbiquity states that it intends to call at trial three of its former employees living in the Western

---

[14] *See Volkswagen II*, 545 F.3d at 316; *TS Tech*, 551 F.3d at 1320-21.
[15] *Volkswagen II*, 545 F.3d 316; *TS Tech*, 551 F.3d at 1321.

District of Washington. Federal Rule of Civil Procedure 45(c)(3)(A)(ii) requires the court to quash or modify a subpoena compelling a person who is neither a party nor a party officer to travel more than 100 miles to testify. The Western District of Washington has subpoena power over Airbiquity's three former employees residing there, but this Court does not. Airbiquity also identifies five of its non-officer employees it may call to testify as to the design, development, marketing, sale and licensing of the challenged products, and that they can only be subpoenaed by the Western District of Washington.

AT&T counters that Airbiquity can require its employees to attend the trial, making it unnecessary for the Court to consider the availability of compulsory process. AT&T also argues that for this issue to be significant, Airbiquity must show that the witnesses it intends to call are "key" witnesses, but that it failed to do so. AT&T also notes that neither the Northern District of Texas nor the Western District of Washington has complete subpoena power over all witnesses, because several AT&T witnesses live outside both districts.

Even assuming that all of the witnesses Airbiquity identified are key witnesses, this factor does not weigh substantially in favor of transfer, because Airbiquity can require its employee witnesses to attend trial.[16] In *Volkswagen II*, the transferee venue had subpoena power over all relevant witnesses.[17] In *TS Tech*, the Federal Circuit did not address this factor because the parties agreed that compulsory process was not needed.[18] Here, neither this Court nor the transferee district would have complete subpoena power over the identified witnesses. It is true

---

[16] *See generally RLI Ins. Co. v. Allstate County Mut. Ins. Co.*, No. 3:08-cv-1256-M, 2008 WL 2201976, at *2-3 (N.D. Tex. May 28, 2008) (Lynn, J.) (holding that defendant's employees were party witnesses within scope of Fed. Rule Civ. P. 45); *Omni Hotels Mgmt. Corp. v. Brennan Beer Gorman / Architects,* No. 3:07-cv-1131-G, 2008 WL 877761, at *8 (N.D. Tex. Mar. 14, 2008) (Fish, J.) (quoting *Frost v. ReliOn, Inc.*, No. 3:06-cv-0822-G, 2007 WL 670550, at *4 (N.D. Tex. Mar. 2, 2007) (Fish, J.) ("[W]here key witnesses are employees of the party seeking transfer, their convenience is entitled to less weight because that party will be able to compel their testimony at trial.")).
[17] *Volkswagen II*, 545 F.3d at 317.
[18] *See Novartis,* 2009 WL 349760, at *4.

that the Western District of Washington has subpoena power over three witnesses over which this Court does not. However, transfer from one district without absolute subpoena power to another such district is not clearly more convenient, and therefore this factor only weighs slightly in favor of transfer.[19]

*(3) The cost of attendance of willing witnesses*

Airbiquity argues that if the case were to be tried in the Northern District of Texas, nine Airbiquity employees and three former Washington employees, assuming they were to appear, would have to travel to Dallas to attend trial, incurring costs for food, travel, and hotel stays, which would largely be saved if trial were held in Washington.

AT&T argues that the convenience of Airbiquity employees should not be considered because their testimony can be compelled. AT&T urges the Court to consider most strongly the convenience of the nonparty witnesses, especially the inventors on its patents. AT&T has identified five such witnesses, one of whom lives in Illinois, three of whom live in Georgia, and one of whom lives in Maryland. Additionally, AT&T argues that if the convenience of current and former Airbiquity employees is considered, then so should the convenience of four of its employee-witnesses, who live in Illinois and Georgia, and argues that the convenience to these witnesses would be greater if the trial were held in Dallas. AT&T argues that Dallas is central to both AT&T and Airbiquity's witnesses, while the Western District of Washington is obviously harder to reach from the central and eastern parts of the country.

The Court finds that the Western District of Washington would not be substantially more convenient for all of the willing witnesses. To be sure, transferring the case would be more convenient for Airbiquity's current and former employees, all but one of whom live in or near

---

[19] *Accord Novartis Vaccines*, 2009 WL 349760, at *4. *But see MHL Tek, LLC v. Nissan Motor Co.*, No. 2:07-CV-289, 2009 WL 440627, at *5 (E.D. Tex. Feb. 23, 2009) (holding that where neither district had absolute subpoena power, willing witness factor was neutral despite presence of nonparty witnesses in the transferee district).

Seattle. However, the convenience to Airbiquity's witnesses would be offset by the inconvenience to AT&T's witnesses, several of whom are non-employees.

This Court recently stated that "[t]he convenience of the witnesses is often regarded as the most important factor to be considered in deciding whether to transfer venue. However, it is the convenience of the nonparty witnesses that is accorded the greatest weight."[20] Airbiquity has identified three nonparty witnesses, all of whom live in or near Seattle, which is approximately 2,150 miles from Dallas. On the other hand, AT&T has identified five nonparty witnesses, one near Chicago, three near Atlanta, and one near Washington, D.C. Those three cities are 1,097 miles, 1,914 miles, and 1,433 miles closer to Dallas than Seattle, respectively. Clearly, regardless of whether the case is tried in Dallas or Seattle, there will be several willing witnesses outside the "100-mile" rule established in *Volkswagen*.

The Court also notes that Dallas is centrally located to the witnesses who reside in or near Washington D.C., Chicago, Atlanta, and Seattle. Although transferring the case to Seattle would likely save the Airbiquity witnesses the inconvenience of having to travel, increasing the convenience to Airbiquity's witnesses would mean adding to the inconvenience of AT&T's witnesses. AT&T points out that the increased distance to its witnesses would mean more time spent traveling as well as greater travel expenses. In addition, if the case were to be tried here, it is possible that many of AT&T's witnesses could testify and then return the same day, saving them the expense and time away from home associated with a hotel stay.

In *Volkswagen*, all witnesses lived in the transferee district, which is not the case here. In *TS Tech*, the witnesses resided significantly closer to the transferee forum than to the original

---

[20] *Sargent v. Sun Trust Bank, N.A.*, No. Civ.A. 3:03-CV-2701, 2004 WL 1630081, at *3 (N.D. Tex. July 20, 2004) (Fitzwater, J.) (internal quotation marks omitted); *see Seeberger Enters., Inc. v. Mike Thompson Recreational Vehicles, Inc.*, 502 F.Supp.2d 531, 539 (W.D. Tex. 2007) (quoting 15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3851 (3d ed. 1998)).

forum.[21]  Here, transfer to the Western District of Washington would inconvenience five nonparty witnesses and be more convenient to three.  A similar rationale applies to the party witnesses, as transfer would be convenient to Airbiquity's witnesses but increase the inconvenience to AT&T's witnesses.  Because the witnesses live across the country, and the added convenience for some witnesses would be offset by relatively equal inconvenience to a greater number of others, this factor tends to disfavor transfer.[22]

*(4) All other practical problems*

The Court does not find any other private factors relevant to the analysis.

**Public Interest Factors**

*(1) The administrative difficulties flowing from court congestion*

The evidence shows that the median time to trial is 19.2 months in the Northern District of Texas and 19 months in the Western District of Washington.[23]  The Court finds that this difference is insignificant and thus this factor is neutral.

*(2) The local interest in having localized interests decided at home*

Airbiquity argues that because it is a Washington corporation, residents of the Western District of Washington have a local interest in having the case decided there.  AT&T claims that because allegedly infringing products were sold in the Northern District of Texas, Dallas residents have a local interest in having the case decided here.

---

[21] *See J2 Global Comm. Inc. v. Protus IP Solutions, Inc.*, 6:08-CV-211, 2009 WL 440525, at *4 (E.D. Tex. Feb. 20, 2009) (Love, Mag. J.) (distinguishing *TS Tech* where neither district was convenient for both parties in case).
[22] *See Invitrogen*, 2009 WL 331889, at *3 (E.D. Tex. Feb. 9, 2009) (finding factor neutral with regard to party witnesses because, although transferee district would be more convenient for defendants' witnesses, it would be less convenient for plaintiff's.); *Network-1 Sec. Solutions, Inc.*, 433 F.Supp.2d 795, 800 (E.D. Tex. 2006) (finding factor neutral where witnesses were not localized in one district and where each district would be more convenient to some witnesses).
[23] Judicial Business of the United States Courts, James C. Duff, Admin. Office of the U.S. Courts, 2007 Annual Report of the Director, Table C-5  (2007), *available at*: www.uscourts.gov/judbus2007/contents.html.

The Court concludes that the residents of the Northern District of Texas do not have a substantial local interest in the outcome of this controversy.  The *TS Tech* court noted that *Volkswagen II* "unequivocally rejected" the argument that the sale of allegedly infringing products in a forum gave the residents of that forum a "substantial interest" in having the case decided locally.[24]  AT&T's argument is virtually identical to that rejected in *Volkswagen* and *TS Tech*.

Conversely, the residents of the Western District of Washington have a local interest in the outcome of this case.  Airbiquity is based in Seattle, and most, if not all of its witnesses, evidence, and business operations are there.  The Court finds that this factor weighs in favor of transfer.

*(3) The familiarity of the forum with the law that will govern the case*

Both courts are equally able to apply federal patent law, and thus this factor is neutral.

*(4) The avoidance of problems regarding conflict of laws or the application of foreign law*

There is no suggestion that this case presents problems regarding a conflict of laws or the application of foreign laws, and thus this factor is neutral.

*Conclusion*

The Court finds that while the Western District of Washington would be more convenient for Airbiquity and its witnesses, Airbiquity has not carried its burden to show that the Western District of Washington is the *clearly* more convenient forum.  Two factors that favor transfer, the relative ease of access to sources of proof and the availability of compulsory process, only do so slightly.  The advantage of these two factors amounts to facilitating the exchange of documents and switching to a forum which has subpoena power over three additional nonparty witnesses, none of whom have stated that they are unwilling to testify.  On the other hand, the most

---

[24] *TS Tech*, 551 F.3d at 1321.

important factor, the convenience of witnesses, clearly disfavors transfer.  The proposed transfer would shift almost all of the logistical burdens to one party and impose significant inconvenience on many nonparty witnesses.  §1404 (a) authorizes transfer "in the interest of justice" and gives substantial deference to the Plaintiff's original choice of forum.  Although the residents of the state of Washington have a local interest in deciding the issues in this case, consideration of all the factors causes the Court to conclude that, in the interests of justice, the case should not be transferred.  The Motion is **DENIED**.

    **SO ORDERED**.

    March 24, 2009.

_____
**BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS**